IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| TEODORA ELLIOTT, | ) | |
|     *pro se* Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:16cv648 (DJN) |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
|     Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

On October 29, 2013, Teodora Elliott ("Plaintiff") applied for Social Security Disability

Benefits ("DIB") and, on January 8, 2014, for Supplemental Security Income ("SSI") under the

Social Security Act ("Act"), alleging disability from breast cancer, chemotherapy treatment, an

abdominal hernia and an aorta aneurysm, with an alleged onset date of October 16, 2013. The

Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon

reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a

written decision and the Appeals Council denied Plaintiff's request for review, rendering the

ALJ's decision as the final decision of the Commissioner.

Plaintiff, now proceeding *pro se*, seeks judicial review of the ALJ's decision pursuant to

42 U.S.C § 405(g), arguing that the ALJ erred in formulating the residual functional capacity

("RFC"), and that additional evidence warrants remand. (Pl.'s Mot for Summ. J. with a Br. in

Support ("Pl.'s Mem.") (ECF No. 12) at 1-2.) This matter now comes before the Court by

---

[1]     On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social
Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill should be
substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this matter.

consent of the parties, pursuant to 28 U.S.C. § 636(c)(1), on the parties' cross-motions for summary judgment, rendering the matter now ripe for review.[2] For the reasons that follow, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (ECF No. 12), GRANTS Defendant's Motion for Summary Judgment (ECF No. 15) and AFFIRMS the final decision of the Commissioner.

## I.  PROCEDURAL HISTORY

On October 29, 2013, Plaintiff filed an application for DIB and, on January 8, 2014, Plaintiff filed an application for SSI with an alleged onset date of October 16, 2013. (R. at 207, 211.) The SSA denied these claims initially on June 20, 2014, and again upon reconsideration on October 6, 2014. (R. at 80, 90.) At Plaintiff's written request, the ALJ held a hearing on March 1, 2016. (R. at 37, 141.) On March 15, 2016, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because she could make successful adjustments to jobs that existed in significant numbers in the national economy. (R. at 29-30.) On June 7, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-3.)

## II.  STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the [SSA]'s disability determination 'when an ALJ has applied correct legal standards and the ALJ's

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

3

The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite her physical and mental limitations. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 416.920(a)(4)(v).

### III.    THE ALJ'S DECISION

On March 1, 2016, the ALJ held a hearing during which Plaintiff (then-represented by counsel) and a vocational expert testified. (R. at 37-69.) On March 15, 2016, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 29-30.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 20-29.) At step one, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. at 21.) At step two, he determined that Plaintiff had the following severe impairments: breast cancer, depressive disorder and anxiety disorder. (R. at 21.) The ALJ concluded at step three that none of these impairments or combination of impairments met or medically equaled the severity of one of the listings. (R. at 22.)

4

In assessing Plaintiff's RFC, the ALJ determined that Plaintiff could perform light work with additional limitations. (R. at 23-24.) She could lift and carry ten pounds frequently and twenty pounds occasionally. (R. at 23.) She could sit, stand or walk for six hours in an eight-hour workday. (R. at 23.) Plaintiff could constantly push or pull at the light exertional level. (R. at 23.) Although she could frequently climb stairs and ramps, she could never climb ladders, ropes or scaffolds. (R. at 23-24.) She could frequently balance, stoop, kneel, crouch or crawl. (R. at 24.) Plaintiff could never tolerate exposure to unprotected heights. (R. at 24.) As for her mental RFC, the ALJ limited Plaintiff to understanding, remembering and carrying out short, simple instructions consistent with the performance of unskilled work. (R. at 24.) Plaintiff could tolerate frequent interaction with supervisors and co-workers, but only occasional interaction with the public. (R. at 24.)

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (R. at 28.) Then, at step five, the ALJ determined that Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. at 28.) Therefore, she did not qualify as disabled under the Act. (R. at 29-30.)

## IV.    ANALYSIS

Plaintiff, forty-eight years old at the time of this Opinion, previously worked as an insurance representative and a sales assistant. (R. at 227, 231.) On September 19, 2013, a biopsy revealed that Plaintiff had stage II left breast cancer. (R. at 339.) She applied for Social Security Benefits, alleging disability from stage II breast cancer, chemotherapy treatment, abdominal hernia and aorta aneurysm, with an alleged onset date of October 16, 2013. (R. at

230.)  Plaintiff's appeal to this Court challenges the ALJ's RFC assessment.[3]  (Pl.'s Mem. at 1-2.)  Specifically, she alleges that the ALJ erred in the weight that he assigned Plaintiff's two treating physicians.  (Pl.'s Mem. at 1.)  Additionally, Plaintiff asks the Court to remand based on new evidence submitted with her motion for summary judgment.  (Pl.'s Mem. at 1-2.)

## A. The ALJ Did Not Err in Assigning Weight to Plaintiff's Treating Physicians.

Plaintiff alleges that the ALJ erroneously weighed the opinions of her treating physicians, resulting in a faulty RFC.  (Pl.'s Mem. at 1.)  The ALJ gave great weight to the opinion of Attique Samdani, M.D., but little weight to the opinion of Vivian Fernandez, M.D.  (R. at 27-28.)  Defendant responds that the ALJ properly weighed the medical opinion evidence.  (Def.'s Mot. for Summ. J. and Br. in Support ("Def.'s Mem.") (ECF No. 15) at 18.)

After step three of the sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1), 416.920(e)-(f), 416.945(a)(1).  In analyzing claimant's abilities, an ALJ must first assess the nature and extent of the claimant's physical and mental limitations and then determine the claimant's RFC for work activity on a regular and continuing basis.  §§ 404.1545(b), 416.945(b).  The RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments that have basis in the claimant's credible complaints.  *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* §§ 404.1545(e), 416.945(e).

---

[3]     Plaintiff's pleadings generally restate her belief that her limitations preclude her from working.  (Pl.'s Mem. at 1.)  The only issue that she raises with the ALJ's opinion stems from the ALJ giving her oncologist's opinion weight at the expense of her other medical reports.  (Pl.'s Mem. at 1.)  Giving her pleadings deference, the Court will construe this as an attack on the RFC and the weight that he assigned to her treating physicians.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed") (internal quotations omitted).

To determine which impairments to incorporate, the ALJ must analyze the claimant's provided medical records and any medical evidence resulting from consultative examinations and ordered medical expert evaluations. §§ 404.1512(a)-(e), 404.1527, 416.912(a)-(e), 416.927. When the record contains a number of different medical opinions, including those from Plaintiff's treating sources, consultative examiners, or other sources that show consistency with each other, then the ALJ makes a determination based on that evidence. §§ 404.1520b(a), 416.920b(a). If, however, the medical opinions conflict internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. §§ 404.1520b(b), 404.1527(c)(2)-(6), (e), 416.920(b), 416.927(c)(2)-(6), (e).

The ALJ must evaluate and assign weight to every medical opinion, regardless of its source. §§ 404.1527(c), 416.927(c). In doing so, he considers the following factors: (1) examining relationship; (2) treatment relationship; (3) supportability from objective medical evidence; (4) consistency; and, (5) specialization. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5). Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up specious inconsistencies." *Dunn*, 607 F. App'x at 267 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, a reviewing court should leave untouched an ALJ's decision regarding weight afforded a medical opinion unless the ALJ failed to give a sufficient reason for the weight afforded. *Id.*

### i. The ALJ Did Not Err by Giving Great Weight to Dr. Samdani's Opinion.

Plaintiff first takes issue with the ALJ's assignment of great weight to Dr. Samdani's opinion. (Pl.'s Mem. at 1.) Dr. Samdani opined that Plaintiff could not perform strenuous activity, but that she could carry out light or sedentary work. (R. at 371, 423, 495.) The ALJ

gave this opinion great weight, because it comported with the evidence in the record, including examination findings. (R. at 27.) Substantial evidence in the form of Dr. Samdani's examination findings, the other objective medical evidence and Plaintiff's daily activities supports the ALJ's decision.

Dr. Samdani's opinion comports with his own examination findings, supporting the ALJ's decision. On November 26, 2013, Plaintiff presented to Dr. Samdani at Virginia Cancer Institute following her breast cancer diagnosis. (R. at 378.) Plaintiff had no specific symptoms and denied any abnormalities on review. (R. at 378-79.) For example, she denied headaches, blurred vision, nausea, joint pain and excessive fatigue. (R. at 379.) She also denied insomnia, depression and mood swings. (R. at 379.) Dr. Samdani noted that the evidence did not demonstrate any metastatic disease. (R. at 378.) On examination, Plaintiff exhibited a normal range of motion with no tenderness, swelling or obvious weakness. (R. at 380.) Plaintiff displayed a normal gait without any sensory or motor deficits. (R. at 380.)

On January 8, 2014, Plaintiff again presented to Dr. Samdani. (R. at 370.) Dr. Samdani noted that Plaintiff looked clinically stable and that she had responded well to chemotherapy. (R. at 373.) On examination, Plaintiff had normal findings, including no joint pain, swelling, redness, decreased range of motion or obvious weakness. (R. at 372.) Additionally, Plaintiff exhibited a normal gait and no sensory or motor deficits. (R. at 372.) Plaintiff denied any headaches, blurred vision, insomnia, depression or mood swings. (R. at 371.)

During each of Plaintiff's visits through March 19, 2014, Dr. Samdani made similarly unremarkable findings. She looked clinically stable and responded well to chemotherapy. (R. at 373, 374, 381, 496, 499.) On exam, Plaintiff had normal findings, including no joint pain, swelling, redness, decreased range of motion or obvious weakness. (R. at 371, 375, 379, 494,

498, 504.)  Plaintiff exhibited a normal gait with no sensory or motor deficits.  (R. at 372, 376, 380, 495, 498, 505.)  Plaintiff consistently denied insomnia, depression and mood swings.  (371, 375, 379, 495, 498, 504.)

The only exception to her unremarkable visits occurred on February 5, 2014.  (R. at 503.) Plaintiff presented to Dr. Samdani, complaining of generalized weakness, dehydration and nausea, but denied vomiting.  (R. at 503.)  Dr. Samdani noted that her performance had declined and ordered a hold on her treatment until she improved.  (R. at 505.)  She declined admission to the hospital and instead accepted IV fluids as an outpatient.  (R. at 505.)  However, on February 18, 2014, Dr. Samdani noted that her performance status had improved.  (R. at 497.)  She denied any nausea or excessive fatigue.  (R. at 497.)  She had "had an excellent response to chemotherapy" and appeared stable.  (R. at 499.)  Her follow-up with Dr. Samdani on March 19, 2014 demonstrated similar improvement.  (R. at 494-96.)

On April 29, 2014, Plaintiff underwent a left mastectomy and sentinel node dissection. (R. at 520-21.)  On May 20, 2014, Plaintiff followed up with Dr. Samdani, who noted that Plaintiff's pathology tests revealed node negative invasive cancer.  (R. at 488-90.)  Plaintiff denied any excessive fatigue, weight loss, chest pain, joint pain, swelling, redness or decreased range of motion.  (R. at 488-89.)  She had not experienced headaches, blurred vision or sensory problems.  (R. at 489.)  Plaintiff denied insomnia, depression or mood swings.  (R. at 489.)  On examination, Dr. Samdani again made normal findings.  (R. at 489.)  Plaintiff had no tenderness, swelling, clubbing or edema.  (R. at 489.)  She had a normal gait without any motor deficits.  (R. at 489.)

On May 15, 2015, Dr. Samdani found no clinical evidence of recurrence of breast cancer or indicators for restaging.  (R. at 707.)  Thereafter, he found no evidence of recurrence or

indicators for restaging. (R. at 663, 714, 718.) This visit, as well as all other visits through January 13, 2016, produced entirely normal findings. Plaintiff denied excessive fatigue, weight loss, chest pain, joint pain, swelling, redness or decreased range of motion. (R. at 662, 705, 713, 717.) She denied any insomnia, depression or mood swings. (R. at 662, 705, 713, 717.) Plaintiff had no tenderness, clubbing or edema. (R. at 663, 706, 714, 718.) Plaintiff appeared clinically stable. (R. at 707, 714, 718.)

The objective findings from Plaintiff's visits with Dr. Samdani do not conflict with Dr. Samdani's opinion that she could not perform physically strenuous activity, but that she could perform light or sedentary work. This lack of conflict supports the ALJ's decision to give Dr. Samdani's opinions great weight. Additionally, Dr. Samdani's opinion comports with the other objective evidence in the record.

On October 8 and October 24, 2013, Plaintiff presented to Deborah Wheeler, N.P.-C, at Virginia Cancer Institute. (R. at 428-30, 435-37.) On both visits, Plaintiff denied excessive fatigue, weight loss, angina chest pain, swelling, redness or decreased range of motion. (R. at 428, 435.) During the second visit, Plaintiff complained of chest wall pain, but Nurse Wheeler attributed that to her port. (R. at 435.) Plaintiff denied insomnia, depression or mood swings. (R. at 428, 435.) On examination, Plaintiff exhibited no edema or other significant abnormalities. (R. at 429, 436.) Nurse Wheeler noted that Plaintiff had tolerated chemotherapy well. (R. at 435) She also opined that she could carry on all pre-disease activity without restrictions. (R. at 429, 436.)

On November 6, 2013, Plaintiff visited James L. Khatcheressian, M.D., at Virginia Cancer Institute. (R. at 431-34.) Plaintiff denied excessive fatigue, chest pain, back pain and persistent headaches. (R. at 432.) She also denied depression, anxiety and insomnia. (R. at

432.)  On examination, Dr. Khatcheressian found her in no acute distress, with no back pain or edema.  (R. at 433.)  Other than the mass on her left breast, she exhibited no abnormalities.  (R. at 433.)  Dr. Khatcheressian opined that Plaintiff could not perform physically strenuous activity, but she could carry out light or sedentary work based on her ambulatory capabilities.  (R. at 433.)

On March 5, 2014, Bonnie Johnson, N.P., examined Plaintiff at Virginia Cancer Institute. (R. at 501-02.)  She complained of leg cramping and diarrhea, which Nurse Johnson suspected had stemmed from a potassium deficiency.  (R. at 501.)  On exam, Plaintiff exhibited no edema. (R. at 502.)  Nurse Johnson assessed her with a 100% performance status.  (R. at 502.)

On February 11, 2014, Plaintiff presented to cardiologist James B. Garnett, M.D., at Virginia Cardiovascular Specialists.  (R. at 536.)  On exam, Dr. Garnett made normal cardiological findings and found no clubbing or extremity edema, although Plaintiff complained of joint pain.  (R. at 537.)  Plaintiff denied any chest discomfort, palpitations, syncope or near syncope.  (R. at 536.)  On subsequent visits in May, June and September 2014, Dr. Garnett made similarly unremarkable findings.  (R. at 530, 533, 583.)

On July 23, 2015, Plaintiff presented to the emergency department at St. Francis Medical Center with complaints of slurred speech and facial numbness.  (R. at 720.)  She denied numbness in her arms or legs.  (R. at 720.)  She denied problems with any other systems as well. (R. at 722.)  Brian Downing, M.D., examined Plaintiff and determined that she had a normal range of motion with no edema or tenderness.  (R. at 720, 723.)  She exhibited normal 5/5 strength in her biceps, triceps, plantar and dorsi feet.  (R. at 723.)  Additionally, Plaintiff had normal coordination and reflexes.  (R. at 723.)  Dr. Downing found her with a normal mood, affect, behavior, judgment and thought content.  (R. at 723.)  Shortly after admission, a nurse noted that Plaintiff spoke in full sentences without difficulty.  (R. at 727.)  Plaintiff told the nurse

that she felt normal.  (R. at 727.)  Later that same day, Mesfin Tefera, M.D., determined that Plaintiff's symptoms had already resolved.  (R. at 728.)  On exam, Dr. Tefera found that Plaintiff exhibited no cyanosis, clubbing or abnormalities in any other system.  (R. at 731.)

The objective findings from Plaintiff's visits to her primary care physician, Dr. Fernandez, also support the ALJ's decision to give great weight to Dr. Samdani's opinion.  On July 3, 2014, Plaintiff presented to Dr. Fernandez at Virginia Physicians, Inc.  (R. at 572-74.) Plaintiff reported doing well overall despite experiencing medication-induced fatigue and joint and muscle pain.  (R. at 572.)  On exam, Dr. Fernandez found no clubbing, cyanosis or edema. (R. at 572.)  Plaintiff had an abdominal wall hernia, but otherwise demonstrated nothing remarkable.  (R. at 572-73.)  She maintained good eye contact, spoke clearly and had a full range of mood and affect.  (R. at 573.)

On July 9, 2014, Plaintiff returned to Dr. Fernandez, complaining of a sore throat.  (R. at 569.)  Plaintiff denied any fatigue, chest pain, orthopnea, edema or claudication.  (R. at 571.)  Dr. Fernandez found Plaintiff alert and oriented, and noted no abnormalities on examination.  (R. at 569.)

On March 19, 2015, Plaintiff visited Dr. Fernandez, complaining of low potassium and joint and back pain.  (R. at 624.)  Plaintiff admitted to muscle stiffness in the morning and tenderness, but denied any muscle weakness.  (R. at 626.)  Plaintiff denied suicidal thoughts, hallucinations or loss of appetite, but she admitted feeling anxious and depressed.  (R. at 627.) She claimed that financial and marital difficulties worsened her psychiatric conditions.  (R. at 627.)  On exam, Dr. Fernandez found no clubbing, cyanosis, edema or any other abnormalities. (R. at 624.)  Her psychiatric exam revealed an intact cognitive function with good eye contact, a full range of mood and affect, clear speech and a sad affect.  (R. at 624.)

The objective evidence from the medical records above supports the ALJ's conclusion to give great weight to Dr. Samdani's opinion. Likewise, Plaintiff's stated activities support the ALJ's decision with respect to Dr. Samdani's opinion.

On February 20, 2014, and again on September 8, 2014, Plaintiff completed an adult function report. (R. at 262-69, 278-85.) She reported that she lived in a house with her family. (R. at 262.) She completed light housework and helped with her children and meals. (R. at 262-64, 278.) She reported having no problems with her personal care. (R. at 263, 279.) She did not need reminders to take care of personal needs. (R. at 264, 280.) She could prepare easy meals every day. (R. at 264, 280.) Plaintiff could complete light housework with some assistance, such as laundry, dusting and washing the dishes. (R. at 264, 280.) Plaintiff reported that she could drive a car when going out. (R. at 265, 281.) In the more recent function report, Plaintiff reported that she could walk for up to an hour before needing to rest for five to ten minutes. (R. at 283.) Her conditions affected her lifting, bending, reaching, kneeling, memory and concentration. (R. at 283.) But, they did not affect her squatting, standing, walking, sitting, talking, hearing, stair climbing, seeing, completing tasks, understanding, following instructions, using hands or getting along with others. (R. at 283.) These activities support the ALJ's assignment of great weight to Dr. Samdani's opinion that Plaintiff could perform light or sedentary work.

Because substantial evidence supports the ALJ's decision to give great weight to Dr. Samdani's opinion, the Court will not disturb that assignment of weight.

13

### ii. The ALJ Did Not Err by Giving Little Weight to Dr. Fernandez's Opinion.

Plaintiff also alleges that the ALJ erred by not assigning more weight to the opinion of Dr. Fernandez. (Pl.'s Mem. at 1.) Defendant responds that the ALJ properly weighed the medical opinion evidence. (Def.'s Mem. at 18.)

On March 30, 2015, Dr. Fernandez opined that Plaintiff could perform less than sedentary work. (R. at 642.) Physically, this stemmed from the fact that she had not yet undergone her reconstructive breast surgery and, therefore, could not lift more than five pounds. (R. at 642.) Dr. Fernandez opined that Plaintiff could never climb, balance, stoop, kneel or reach above her shoulder with her left arm. (R. at 641.) Plaintiff could occasionally crouch, crawl, stand and walk. (R. at 641.) Furthermore, Plaintiff could frequently reach overhead with her right arm and could constantly sit. (R. at 641.) Mentally, Dr. Fernandez found that Plaintiff struggled with concentration and the ability to multi-task or make quick decisions. (R. at 642.) Dr. Fernandez gave Plaintiff a "fair to good" prognosis and opined that these limitations would last until October 1, 2015, at which point Plaintiff could return to work. (R. at 641-42.)

The ALJ gave Dr. Fernandez's opinion little weight, because it lacked consistency with the evidence of record, including treatment notes showing that medication could successfully control Plaintiff's mental impairments. (R. at 28.) Substantial evidence supports this decision.

The physical limitations opined by Dr. Fernandez conflict with her own objective findings. Dr. Fernandez consistently found no clubbing, cyanosis or edema. (R. at 571, 572, 624.) The exams produced largely unremarkable findings. (R. at 569, 572-73, 624-26.) Additionally, the objective evidence detailed above supports the ALJ's conclusion that Dr. Fernandez's opinion conflicts with the record.

Furthermore, substantial evidence supports the ALJ's decision not to give more weight to Dr. Fernandez's opinion of Plaintiff's mental impairments.  On exam just eleven days before writing the opinion at issue, Dr. Fernandez found Plaintiff with her cognitive functioning intact, the ability to maintain good eye contact, and clear speech.  (R. at 624.)  Although Plaintiff admitted a depressed mood, anxiety and difficulty sleeping, she denied suicidal thoughts, hallucinations, delusions or loss of appetite.  (R. at 627.)  Dr. Fernandez determined that Plaintiff had a sad affect, although she had the full range of mood and affect.  (R. at 624.)  During Plaintiff's other visits, Dr. Fernandez did not note any psychiatric deficiencies.  (R. at 569, 573.)

The objective notes from Plaintiff's other medical visits support the ALJ's decision. During visits to Dr. Samdani, Plaintiff consistently denied insomnia, depression and mood swings.  (R. at 371, 375, 379, 489, 495, 498, 504, 662, 705, 713, 717.)  During each of those visits, Dr. Samdani found Plaintiff cooperative, alert and oriented with coherent speech.  (R. at 371-72, 375-76, 380, 489, 495, 498, 504, 547, 662-63, 706, 714, 717-18.)  Likewise, when Plaintiff presented to the emergency room on July 23, 2015, Dr. Downing found her with a normal mood, affect, behavior, judgment and thought content.  (R. at 723.)  On April 25, 2014 and April 24, 2015, Ann Schoeneweis, N.P., found Plaintiff alert and oriented with coherent speech and no focal deficits.  (R. at 486, 703.)

The objective records coming from Plaintiff's treatment with psychiatrist Mario Gomez, M.D., also support the ALJ's decision with respect to Plaintiff's mental limitations.  On December 10, 2013, Plaintiff presented to Dr. Gomez for a psychiatric assessment.  (R. at 400.) Dr. Gomez conducted a mental status exam and found Plaintiff alert and oriented.  (R. at 401.) She admitted to anhedonia and sadness and cried throughout the interview.  (R. at 401.) However, she denied suicidal ideation, psychotic symptoms or panic attacks.  (R. at 401.)  Dr.

Gomez determined that Plaintiff had good cognitive status with the ability to recall recent and remote events. (R. at 401.) She had good insight and judgment with superior intellect. (R. at 401.) Dr. Gomez diagnosed her with major depressive disorder. (R. at 401.) He assigned her a GAF of 61-70, indicating mild symptoms or difficulties, but "generally functioning pretty well." (R. at 401.) Dr. Gomez prescribed a low dose of Zoloft and suggested some psychotherapy options. (R. at 401.)

On January 23, 2014, Plaintiff returned to Dr. Gomez, who found no signs of sadness or depressive issues. (R. at 398.) She could concentrate on fairly complex tasks and could drive on her own. (R. at 398.) Dr. Gomez concluded that she seemed stable and utilized good judgment and insight. (R. at 398.) He left the Zoloft dosage the same. (R. at 398.)

On May 19, 2014, Dr. Gomez noted that Plaintiff had fewer panic attacks following her hemimastectomy. (R. at 560.) After a mental status exam, Dr. Gomez noted that Plaintiff felt in better control of her emotional rages and was alert and oriented. (R. at 560.) She did feel somewhat emotionally numb and anhedonic. (R. at 560.) Additionally, she had a monotone speech pattern and walked slowly with psychomotor slowing. (R. at 560.) However, she smiled some and could jest, and she exhibited no signs of panic attacks or anger. (R. at 560.) Follow-up visits through March 19, 2015 had similarly mixed findings, with Plaintiff experiencing some depression and anxiety, but denying suicidal ideations and delusions and appearing alert and oriented. (R. at 563, 607-08, 614, 616, 622-23.) She could meet her obligations with multi-tasking. (R. at 614, 616.)

Plaintiff's daily activities, gathered from her function reports and her testimony before the ALJ, further support the ALJ's decision. Plaintiff could dress and bathe herself. (R. at 52.) She could complete housework, such as sweeping, dusting, washing dishes and laundry. (R. at

53, 264, 280.)  Plaintiff could drive a car.  (R. at 53, 265, 281.)  She reported that her conditions did not affect her ability to understand, follow directions or get along with others.  (R. at 283.) Plaintiff could pay bills, count change, handle a savings account and use a checkbook.  (R. at 265, 281.)  Additionally, Plaintiff had the ability to go grocery shopping with assistance.  (R. at 265, 280.)

Dr. Fernandez's own treatment notes, the objective notes from Plaintiff's other visits, and Plaintiff's stated daily activities support the ALJ's decision not to give more weight to Dr. Fernandez's opinion of Plaintiff's mental impairments.  Therefore, the ALJ did not err with respect to the weight that he assigned Plaintiff's doctors.

### B. New Evidence Does Not Warrant Remand.

Plaintiff also argues that the evidence that she attached to her motion for summary judgment warrants remand.  (Pl.'s Mem. at 1-2.)  Defendant encourages the Court to reject this argument, because the evidence fails to meet the criteria for a sentence six remand.  (Def.'s Mem. at 16.)

A court may remand on the basis of additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  The evidence must meet four requirements:  (1) the new evidence must relate to the period before the ALJ's decision; (2) the new evidence has a material effect on the outcome; (3) there exists good cause for the claimant's failure to submit the new evidence before the ALJ; and (4) the plaintiff must make a general showing of the evidence.  *Borders v. Heckler*, 777 F.2d 954, 954-55 (4th Cir. 1985), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991); *Brown v. Comm'r of Soc. Sec.*,

17

2010 WL 2787898, at *7 n.5 (E.D. Va. June 21, 2010) (noting that the Fourth Circuit continues to cite *Borders* as the standard for new evidence); *Washington v. Comm'r of Soc. Sec.*, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009) (applying the *Borders* four-part test to new evidence). "Evidence is new if it is not cumulative or duplicative. . . ." *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011). Plaintiff bears the burden of showing that the additional evidence meets the requirements for remand. *Fagg v. Chater*, 1997 WL 39146, at *2 (4th Cir. Feb. 3, 1997) (citing *Borders*, 777 F.2d at 955).

Here, Plaintiff submitted nine additional exhibits with her motion for summary judgment. (ECF No. 12-2.) The Court will examine each in turn to determine whether it meets the requirement for remand. When assessing the evidence against the newness prong, the Court notes that the relevant period ended on March 15, 2016 — when the ALJ issued his opinion.

### i. Letter from Dr. Gomez

Plaintiff submits a letter from Dr. Gomez dated December 9, 2016. (ECF No. 12-2 at 2.) In the letter, Dr. Gomez writes that Plaintiff suffers from depression and anxiety and has a new diagnosis of fibromyalgia. (ECF No. 12-2 at 2.) Further, Dr. Gomez declares her totally and permanently disabled. (ECF No. 12-2 at 2.)

This letter does not relate back to the relevant time period. It gives no indication that Plaintiff suffered from fibromyalgia before the date of the letter, nor any details about her symptoms. Additionally, the letter lacks materiality. It has no objective details that could reasonably change the ALJ's decision. Dr. Gomez's opinion that she "is declared totally and permanently disabled" would not command any special weight. *Morgan v. Barnhart*, 142 F. App'x 716, 722 (4th Cir. 2005). The regulations reserve such legal conclusions for the

18

Commissioner. §§ 404.1527(d)(1), 416.927(d)(1). Because it does not relate back to the relevant time period and lacks materiality, Dr. Gomez's letter does not warrant remand.

### ii. Letter from Dr. Kilgore

Plaintiff also submits a letter from Dennis Kilgore, Ph.D., L.C.S.W., dated January 4, 2017, that restates Plaintiff's depression and anxiety diagnoses. (ECF No. 12-2 at 3.) The letter also opines that Plaintiff cannot perform adequately in full-time employment. Because it states that Plaintiff has received treatment from Dr. Kilgore's office since March 13, 2014, this letter could relate back to the relevant time period. However, it offers no additional details and merely restates the diagnoses found in the record. Therefore, it merely duplicates other evidence already in the record. To the extent that Dr. Kilgore's opinion offers something new, that opinion could not reasonably alter the outcome of the case, as it pertains to an issue reserved for the Commissioner. Therefore, Dr. Kilgore's letter does not warrant remand.

### iii. Patient Ledger

Plaintiff submits a ledger listing her visits and the related payments to HMG Psychiatric Associates from December 10, 2013 to November 29, 2016. (ECF No. 12-2 at 4-12.) This ledger contains no objective medical evidence that could lead to a different result. It lacks any specific outcomes of the therapy sessions, observations by the doctors or symptoms reported by Plaintiff. Therefore, Plaintiff has not shown its materiality, and it cannot form the basis for remand.

### iv. Dr. Danielides' Treatment Notes

Next, Plaintiff submits treatment notes from visits with Stamatina Danielides, M.D., on September 13, 2016 and November 7, 2016. (ECF No. 12-2 at 13-22.) On September 13, Dr. Danielides assessed Plaintiff with fatigue. (ECF No. 12-2 at 14.) Then, on November 7, Dr.

19

Stamatina assessed her with chronic fatigue and fibromyalgia. (ECF No. 12-2 at 21.) However, neither record contains any objective evidence of the effects of Plaintiff's fibromyalgia before March 15, 2016 — the relevant time period. Because it fails to satisfy the first prong, these records do not warrant remand.

### v. Dr. Fernandez's Treatment Notes

Next, Plaintiff submits notes from a March 19, 2015 visit with Dr. Fernandez. (ECF No. 12-2 at 23.) However, the ALJ already considered these notes, as they appeared in the record before the ALJ. (R. at 643.) Therefore, they cannot satisfy the newness test.

### vi. Chesterfield Mental Health Letter

Plaintiff submits a letter from Celeste Minar, L.P.C., dated July 20, 2016, stating that Plaintiff has treated at the Chesterfield County Department of Mental Health Support Services since December 11, 2015. (ECF No. 12-2 at 24.) The letter contains three objective pieces of information: (1) Plaintiff was diagnosed with Major Depressive Disorder, Recurrent, Moderate; (2) Plaintiff has seen a therapist thirteen times from December 22, 2015 until the date of the letter; and (3) the psychiatrist increased Plaintiff's dosage of Zoloft to 200 mg on March 15, 2016. (ECF No. 12-2 at 24.) Her diagnosis merely restates information already in the record without providing additional objective details. Therefore, it does not constitute new evidence. The number of therapy visits likewise lacks any objective findings and, therefore, lacks materiality. The increase in dosage occurred outside of the relevant time period and, in any event, contains no evidence as to the success or failure of the change in dosage.

The letter also contains an opinion that Plaintiff cannot work, but that conclusion is reserved for the Commissioner and deserves no weight. *Morgan*, 142 F. App'x at 722. Therefore, the letter cannot constitute a basis for remand.

### vii.  Letter from Dr. Samdani

Plaintiff also submits a letter from Dr. Samdani, dated July 20, 2016.  (ECF No. 12-2 at 25.)  Dr. Samdani noted that Plaintiff's physical and mental health had declined.  However, Dr. Samdani opined that her "symptoms are likely clinically unrelated to her history of cancer." (ECF No. 12-2 at 25.)  The letter does not indicate that Plaintiff's worsening occurred before the relevant period.  The worsening of Plaintiff's condition does not provide for a remand; rather, it provides a basis for a new application for benefits.  §§ 404.620(a)(2), 416.330(b) (providing that if an applicant meets the requirements for disability after the period in which her application was in effect, she must file a new application).  Therefore, this letter does not warrant remand.

### viii.  Dr. Khatcheressian's treatment notes

Plaintiff also submits treatment notes from an October 8, 2013 visit with Nurse Weller. (ECF No. 12-2 at 26-28.)  However, these notes appeared in the record considered by the ALJ. (R. at 428-30.)  Thus, they fail for lack of newness.

### ix.  Plaintiff's Letter to Appeals Council

Finally, Plaintiff submits a letter that she sent to the Appeals Council requesting reconsideration of the ALJ's decision, dated March 15, 2016.  (ECF No. 12-2 at 29-33.)  In this letter, she takes issue with the ALJ's decision that she does not qualify as disabled, but does not offer any new objective evidence to substantiate her claim.  (ECF No. 12-2 at 29-33.)  The Appeals Council considered this letter and made it part of the record.  (R. at 4-5.)  However, it determined that it did not provide a basis for changing the ALJ's decision.  (R. at 2.)  Plaintiff has not alleged that the Appeals Council erred, nor has she met her burden to prove that the letter constitutes new and material evidence warranting remand.

21

In conclusion, none of Plaintiff's exhibits satisfies the test for new and material evidence. Therefore, the Court will not remand pursuant to sentence six.

V.     CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (ECF No. 12) is hereby DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) is hereby GRANTED, and the final decision of the Commissioner is AFFIRMED.

Let the clerk forward a copy of this Opinion to all counsel of record, and to *pro se* Plaintiff at her address of record.

_____ /s/

David J.  Novak
United States Magistrate Judge

Richmond, Virginia
Date:  July 17, 2017